## Hindman et al., Appellants, *v.* Van Dyke et al.

*Will—Issue devisavit vel non—Undue influence—Evidence—Declarations.*
On an issue devisavit vel non to determine whether a will was procured through undue influence, it is not improper to admit evidence that testator about four years before the will was executed, in speaking about the disposition of his property, said that he had made his home for a long time with proponent and his wife; that they had been as kind to him as parents could be to a child, and that they deserved the greater portion of his estate.  Such evidence has some weight, although slight, to rebut the inference of undue influence.

*Importunities to make a will.*
Mere importunities and insistence are not sufficient evidence of undue influence, unless the jury find that through them the beneficiary under the will succeeded in subjugating the mind of the testator, and in controlling him and taking away his free agency.

Argued Oct. 11, 1892.  Appeal, No. 144, Oct. T., 1892, by plaintiffs, Susannah Hindman et al., from judgment of C. P. Armstrong Co., June T., 1891, No. 231, on verdict for defendants, Hiram Van Dyke and John Van Dyke.  Before PAXSON, C. J., GREEN, WILLIAMS, McCOLLUM, MITCHELL and HEYDRICK, JJ.

Issue devisavit vel non.

At the trial, before WICKHAM, P. J., of the 36th judicial district, specially presiding, the evidence for the contestants tended to show that the testator George Van Dyke, for a few days before his death on Jan. 13, 1888, was in a weak and depressed condition of body and mind, and that he was induced by the urgent request and persistent importunities of the proponent to make the will in dispute, which he executed a few hours before his death.  It was also alleged that proponent

procured the services of John Graham, a justice of the peace, to draw the will.

Plaintiffs' points were among others as follows:

" 1. If the jury are satisfied from the evidence that Hiram Van Dyke was present at the making of the will, and wrote the will; or assisted in making it, these are suspicious circumstances which are to have weight as the quantum of the legacy therein given to Hiram bears to the amount of the whole estate. *Answer:* Gentlemen, if Hiram assisted in the making of this will under which he undoubtedly takes a devise of very considerable value, or if he volunteered to assist in writing the will, either of these circumstances would be a matter of some suspicion in itself. It would not necessarily set the will aside, but might be considered in connection with the other evidence, undoubtedly, when you are looking at the case. If he merely copied the will at the instance of 'Squire Graham, if he penned it under these circumstances, and there is nothing else in the case to excite suspicion, I cannot see that that, in itself, would be a suspicious circumstance. Thus qualified, this point is affirmed." [2]

" 4. If the jury are satisfied from the evidence that Hiram Van Dyke occupied a confidential relation to the testator, who was a member of the family, living with him at the time of his sickness and death; that Hiram insisted upon the making of a will, giving to him a large and valuable proportion of the testator's estate; importuned the testator to make a will, procured the services of 'Squire Graham to write the will; that when Graham came he importuned the testator to make the will; that the testator was in great pain and bodily infirmity; pleaded to be let alone, and asked Hiram to go away and not bother him; that if he (Hiram) knew in how great misery he was, he would do so; that he said that Hiram and John might fix it; that he told Hiram and John if they would make his will he would sign it if it was anywhere near right; that he did not request 'Squire Graham to write his will; that he did not mention the subject only when Hiram or 'Squire Graham put questions to him; that a will was finally procured by Hiram Van Dyke through his persistent importunities to be executed by the testator in which great inequality of division exists in favor of Hiram, and was signed by the testator, within a few

hours of his death; if these facts are believed by the jury it is sufficient to warrant them in finding that undue influence was exercised over the testator by Hiram, and their verdict ought to be for the plaintiff in this issue. *Answer:* This point, gentlemen, is affirmed, provided you find also from the evidence that Hiram by his importunities and insistence mentioned or suggested in this point, succeeded in subjugating the mind of the testator, and in controlling him and taking away his free agency." [3]

Defendants' points were as follows:

"1. That a man has a right by fair argument or persuasion to induce another to make a will and even to make it in his own favor, and a will procured by honest means, by acts of kindness, attention and by persuasion, which delicate minds would shrink from, would not be set aside on this ground alone." Affirmed. [4]

" 2. If the jury believe that after the consultation of the physicians, Dr. McKee told George Van Dyke that his would be fatal, and that if he had any worldly business to attend to, he had better do so at once, and that all persons then retired from the room and left George Van Dyke and John Graham, the scrivener, alone, that George Van Dyke freely and voluntarily told Mr. Graham what disposition he wanted made of his property in his will, and that Graham reduced the same to writing and read it over to George Van Dyke, who was satisfied with it, save with some corrections, that these corrections were made in the will now probated and that he then executed the will, and requested his physician, Dr. McKee, and A. V. Gardner to act as witnesses, and that said will truly expressed the disposition he (George Van Dyke) wished made of his property, then such will must be sustained, and the verdict must be for the defendant." Affirmed. [5]

" 3. That undue influence of the kind that will affect the provisions of a will must be such as subjugates the mind of the testator to the will of the person operating upon it and before the jury would be justified in finding a verdict in favor of the plaintiffs they must be satisfied that there was some fraud practiced on George Van Dyke by Hiram or John Van Dyke, some threats or misrepresentations made, some undue flattery, or some moral coercion employed so as to destroy the

free agency on the part of George Van Dyke, and unless they so find their verdict should be for the defendant." Affirmed. [6]

Verdict and judgment for defendants. Plaintiffs appealed.

*Errors assigned* were, (1) admission of the evidence referred to in the opinion of the Supreme Court; (2–6) instructions, quoting them.

*M. F. Leason, Charles McCandless* with him, for appellant, cited Yardley v. Cuthbertson, 108 Pa. 464 ; Boyd v. Boyd, 66 Pa. 296.

*Orr Buffington,* for appellee, not heard, cited Neel v. Potter, 40 Pa. 483.

PER CURIAM, January 3, 1893 :

This was an issue devisavit vel non to try the question, whether the execution of the instrument offered as the last will and testament of George Van Dyke, was procured through undue influence exerted over the said George Van Dyke by either Hiram Van Dyke, or John Van Dyke, or both of them.

The first specification alleges that the court below erred in admitting certain testimony of H. L. Smith. The object of this testimony, as it appears by the offer, was to prove that in May, 1884, he had a talk with George Van Dyke, the testator; that in that conversation the said testator talked about the disposition of his property, and said that he had made his home for a long time with Hiram Van Dyke and his wife ; that they had been as kind to him as parents could be to a child, and that they deserved the greater portion of his estate ; that these words were used when speaking of how he would dispose of his property by will. The testimony offered in support of it sustained the offer.

While the offer was somewhat remote, yet in view of the fact that the issue was, whether Hiram Van Dyke had procured the execution of this will by the exertion of undue influence, we think it was some evidence, although slight, to rebut that inference.

The remaining assignments allege error in the answers to points. The plaintiff's first and fourth points were affirmed with a proper qualification. The defendant's second and third points were affirmed. We find no error in the answer to any of them.

Judgment affirmed.